■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES BROWN, Appellant. [7 NYS3d 19]—

Judgment, Supreme Court, New York County (Gregory Carro, J., at speedy trial motion, suppression hearings and first trial; Ruth Pickholz, J., at second trial), rendered September 12, 2008, as amended November 7, 2008, convicting defendant, after a jury trial, of robbery in the first degree, and sentencing him, as a persistent violent felony offender, to a term of 22 years to life, unanimously affirmed.

In denying defendant's speedy trial motion, the trial court excluded the period from July 17, 2007, when the People served and filed an off-calendar certificate of readiness, until August 8, 2007, when they announced that they were not ready for trial. Because the court found this 22-day excludable period to be dispositive of defendant's speedy trial claim, it did not rule on other periods claimed by the People to be excludable.

Defendant argues that pursuant to *People v Sibblies* (22

NY3d 1174 [2014]), the court should have inquired further or conducted a hearing as to why the People were not ready on August 8, so that it could determine whether the previously filed certificate of readiness was illusory. Under the particular circumstances of this case, we find this argument unavailing.

In *Sibblies*, after filing an off-calendar certificate of readiness on February 22, 2007, the People requested the medical records of the victim. At the next court date on March 28, 2007, the People stated that they were not ready to proceed because they were "continuing to investigate and [were] awaiting [the assault victim's] medical records" (22 NY3d at 1180). In a plurality opinion, the Court of Appeals, based on different rationales, agreed that the People's off-calendar certificate of readiness was illusory on the record before them.

The three judge concurrence by Chief Judge Lippman "would hold that, if challenged, the People must demonstrate that some exceptional fact or circumstance arose after their declaration of readiness so as to render them presently not ready for trial" at the next court appearance after filing the certificate (22 NY3d at 1178). Chief Judge Lippman found that the People's desire to strengthen their case did not satisfy this requirement.

The three judge concurrence by Judge Graffeo "would decide th[e] case on a narrower basis" (22 NY3d at 1179). While recognizing established precedent that the requirement of actual readiness under CPL 30.30 "will be met unless there is 'proof that the readiness statement did not accurately reflect the People's position' " (*id.* at 1180, quoting *People v Carter*, 91 NY2d 795, 799 [1998]) and that "there is a presumption that a statement of readiness is truthful and accurate" (22 NY3d at 1180), Judge Graffeo found the statement of readiness "illusory" because "[t]he People initially declared that they were ready for trial on February 22 but within days sought copies of the injured officer's medical records, "admitted at the next calendar call that they "were not in fact ready to proceed because they were continuing their investigation" and that they "needed to examine the medical records to decide if they would pursue introduction of the records into evidence at trial," and then "gave no explanation for the change in circumstances between the initial statement of readiness and the[ir] subsequent admission that the[y] . . . were not ready to proceed without the medical records" (22 NY3d at 1181).

Following analogous precedent pertaining to plurality opinions by the United States Supreme Court, we apply the narrower approach of Judge Graffeo, which leaves intact well-

settled law that a post-certificate assertion that the People are not ready does not, by itself, vitiate the previously filed certificate of readiness (*see Marks v United States*, 430 US 188, 193 [1977] ["(w)hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds" (internal quotation marks omitted)]; *see also For the People Theatres of N.Y., Inc. v City of New York*, 6 NY3d 63, 79 [2005]).

The record shows that on July 9, 2007, the court stated that "defense counsel is currently on trial" and asked the prosecution about alternative dates. The prosecutor responded, "7/23 is good. The week of 7/30 is bad." The court adjourned the case to August 8, 2007. On July 17, the People filed and served the certificate of readiness.

On August 8, the prosecutor stated that the People were not ready for trial. The court noted that defense counsel was on trial and defendant voiced his dissatisfaction and requested new counsel. Noting that defense counsel was "very busy" and that he had been "on trial [the] last time" as well, the court granted defendant's request for new counsel and declared that, because of defendant's multiple requests for new counsel, his speedy trial time would stop running.

On the speedy trial motion, defendant's new counsel argued that even if the certificate of readiness had been filed and served properly on July 17, it was illusory because the People were not actually ready on the next court date. The court disagreed, stating that this was not a case where the People filed their certificate even though their witnesses were not ready. The court then denied defense counsel's request for a hearing.

On this record, unlike, *Sibblies*, there is no "proof that the readiness statement did not accurately reflect the People's position, "so as to render the prior statement of readiness illusory (*Sibblies*, 22 NY3d at 1180 [Graffeo, J., concurring] [internal quotation marks omitted]). Rather, defense counsel merely speculated that the certificate of readiness was illusory because the People announced that they were not ready at the next court appearance after it was filed, which is insufficient to rebut the presumption that the certificate of readiness was accurate and truthful (*see e.g. People v Acosta*, 249 AD2d 161, 161-162 [1st Dept 1998] [the defendant did not submit evidence to contradict court's findings and failed to demonstrate that the People's readiness statements were illusory], *lv denied* 92 NY2d 892 [1998]).

Indeed, the record supports an inference that the People made an initial strategic decision to proceed, if necessary, with a minimal prima facie case. At the calendar call on July 9, the prosecutor stated that July 23 was "good" for the People for hearing and trial. The filing of the certificate of readiness on July 17 was consistent with that statement. In contrast, in *Sibblies*, the People sought the injured officer's medical records within days of filing the certificate and admitted at the next court appearance that they were not ready to proceed without them. Thus, the prosecutor was required to explain the change in circumstances because if the People needed the medical records to be ready on March 28, then they could not have been ready on February 22 when the certificate of readiness was filed.

Defendant's conviction for first-degree robbery under Penal Law § 160.15 (3) is supported by legally sufficient evidence and is not against the weight of the evidence. There is no reason to disturb the jury's determination that the hypodermic needle used to threaten one victim during the robbery was a dangerous instrument under Penal Law § 10.00 (13) (*see People v Nelson*, 215 AD2d 782 [2d Dept 1995]). Contrary to defendant's contention that some showing of actual injury was required, the needle may be a dangerous instrument, "regardless of the level of injury actually inflicted" (*Matter of Markquel S.*, 93 AD3d 505, 506 [1st Dept 2012], *lv denied* 19 NY3d 806 [2012]; *see also People v Molnar*, 234 AD2d 988 [4th Dept 1996], *lv denied* 89 NY2d 1038 [1997]). Even if the needle was uncontaminated and was threatened to be used by the non-HIV-positive defendant, the jury could have found that it was capable of causing serious puncture wounds or transmitting any harmful disease.

Since defendant did not request a second independent source hearing for one of the victims, his claim that the court should have conducted a de novo hearing is unpreserved and we decline to review it in the interest of justice (*see* CPL 470.05 [2]). As an alternative holding, we find it to be without merit. The trial court's finding that the victim had an independent source for his identification is amply supported in the record. The victim viewed defendant face-to-face before and during the crime, on the street and in the store, and over an extended period of time, and gave a description that matched defendant's actual appearance. While he testified at the first trial that he was sure that he had correctly identified defendant in court because he had previously identified him in a lineup, which caused a mistrial, that testimony did not serve to negate his

prior unequivocal testimony at the independent source hearing that he had an independent recollection of defendant from the crime itself.

The court did not improvidently exercise its discretion in denying defendant's request for an in-court lineup (*see People v Benjamin*, 155 AD2d 375 [1st Dept 1989], *lv denied* 75 NY2d 867 [1990]). The record demonstrates that the victims were able to make reliable in-court identifications without a lineup. Their consistent accounts of the robbery showed that they both had a good opportunity to view the robber's face at close range. Moreover, one victim never viewed any pretrial identification procedure, so his in-court identification could only have been based on his recollection from the night of the crime (*see People v Brooks*, 39 AD3d 428 [1st Dept 2007], *lv denied* 9 NY3d 873 [2007]).

Defendant's claim that the court unduly limited the time for his questioning during voir dire is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we find it to be without merit. Unlike *People v Steward* (17 NY3d 104 [2011]), the facts of this case did not suggest a need to explore possible juror biases beyond the inquiry already performed by the court.

Defendant's claim that the court improperly prevented his counsel from asking jurors "whether the HIV allegations might affect their ability to deliberate fairly" is unpreserved and we decline to review it in the interest of justice. Nor did defense counsel complain that the court's inquiries were insufficient to properly assess whether the prospective jurors could be fair. As an alternative holding, we find that the court adequately explored the issue with the jurors (*see e.g. People v Dinkins*, 278 AD2d 43 [1st Dept 2000], *lv denied* 96 NY2d 828 [2001]), and the fact that the jury ultimately acquitted defendant of one of the alleged robberies involving the needle showed that the jurors were able to be fair.

Defendant's general objection failed to preserve a challenge to the procedure employed by the court in resolving his *Batson* application (*see People v Richardson*, 100 NY2d 847, 853 [2003]; *People v McLeod*, 281 AD2d 325 [1st Dept 2001], *lv denied* 96 NY2d 899 [2001]), and we decline to review it in the interest of justice. As an alternative holding we find that even if the court's *Batson* analysis was "less than ideal" (*People v Smocum*, 99 NY2d 418, 421 [2003]), the court did not prevent defendant from making a particularized objection. Furthermore, the court's finding that the prosecutor had given neutral, i.e., non-pretextual, grounds for the challenges, is supported by the rec-

ord (*see e.g. People v Montalvo*, 293 AD2d 380, 381 [1st Dept 2002], *lv denied* 98 NY2d 699 [2002]).

Defendant's claim that the trial court failed to instruct the jury to consider the evidence separately with respect to each robbery and that the prosecutor commingled the evidence on summation, thereby depriving him of due process and a fair trial is unpreserved, since he did not object to the prosecutor's summation, and he did not request or object to the absence of a "no commingling" charge (*see People v Harris*, 29 AD3d 387 [1st Dept 2006], *lv denied* 7 NY3d 757 [2006]). We decline to review the claim in the interest of justice. As an alternative holding, we find that the court's charge as a whole "indicate[s] the independent nature of the crimes and the jury's obligation to consider them separately" (*People v Goodfriend*, 64 NY2d 695, 697 [1984]). Even though the prosecutor argued during summation that there were similarities between the two crimes, the jury acquitted defendant of one the two robberies, showing that jury was able to distinguish the evidence presented as to each incident (*see generally People v Santana*, 27 AD3d 308, 310 [1st Dept 2006], *lv denied* 7 NY3d 794 [2006]). Concur—Gonzalez, P.J., Friedman, Andrias, Gische and Kapnick, JJ.