OPINION OF THE COURT
Steven M. Statsinger, J.
Defendant is charged with criminal contempt in the second degree, in violation of Penal Law § 215.50 (3), and two counts of criminal trespass in the third degree, in violation of Penal Law § 140.10 (a) and (e). On January 29, 2016, the court denied defendant’s initial motion to dismiss pursuant to CPL 30.30, finding that 48 days were chargeable to the People. That same day, defendant renewed his motion, citing People v Rodriguez (135 AD3d 587 [1st Dept 2016]), which had come down some eight days earlier. Despite Rodriguez, for the reasons discussed below, the court adheres to its finding that 48 days are chargeable to the People. Accordingly, defendant’s renewed motion to dismiss is denied.
I. Factual Background
A. The Allegations
On June 2, 2015, defendant was observed, via video surveillance, on the roof of the Manhattan apartment building where his girlfriend resided. Surveillance video also captured him opening a door to the building for his girlfriend. By these actions, defendant violated an order of protection in favor of the girlfriend.
B. Legal Proceedings
Defendant was arraigned on June 6, 2015, on a misdemeanor complaint charging him with criminal contempt in the second degree, in violation of Penal Law § 215.50 (3), and two counts of criminal trespass in the third degree, in violation of Penal Law § 140.10 (a) and (e). The court set bail and adjourned the case to June 11 for conversion. The People filed and served the complainant’s supporting deposition on that date.
Subsequent calendar appearances took place on July 7, 2015, by which time defendant had bonded out, September 10, 2015, October 21, 2015, and January 29, 2016. Defendant filed his initial 30.30 motion on October 21, 2015, and the court denied it on January 29, 2016. That same day, defendant filed a renewed 30.30 motion. The People responded on March 7, and the matter has been sub judice since then.
*402 II. Discussion
Defendant is charged with “at least one . . . misdemeanor punishable by a sentence of imprisonment of more than three months.” (CPL 30.30 [1] [b].) Thus, his motion to dismiss must be granted if the People were not ready for trial within 90 chargeable days of the commencement of the action. (Id.) Here, there were five court dates from the commencement of the action through the filing of the motion to dismiss. Those events spanned 138 calendar days, and 48 of those days are chargeable to the People. The motion to dismiss is accordingly denied.
A. Speedy Trial Law is in Flux
1. People v Sibblies
People v Sibblies (22 NY3d 1174 [2014]) dismissed an information on speedy trial grounds. There, the People filed a misdemeanor information on February 8, 2007. Fourteen days later, on February 22, they filed an off-calendar certificate of readiness (COR). On March 2, the People requested the medical records of the victim and, on March 28, at the next scheduled calendar call, announced that they were not ready for trial because they were “continuing to investigate” and were “awaiting medical records.” The People filed a second COR on May 23, 2007, some 104 calendar days after the speedy trial period began to run. Both Supreme Court and the Appellate Division concluded that fewer than 90 chargeable days had elapsed; those courts excluded the 34-day period between the filing of the first COR and the March 28 declaration of un-readiness. (People v Sibblies, 98 AD3d 458, 460 [1st Dept 2012] [since the People could have proceeded to trial without the medical records they requested post-COR, they “were plainly ready to present a prima facie case when they filed their certificate of readiness on February 22, (thus) that certificate was not illusory”].)
The Court of Appeals, however, unanimously reversed. All six judges who participated agreed that this 34-day period should have been charged to the People, although there was no single rationale behind the reversal.
A three-Judge opinion authored by Chief Judge Lippman “would [have] h[e]ld” that, where the People “file an off-calendar certificate of readiness and subsequently declare at the next court appearance that they are not ready,” the People “must demonstrate that some exceptional fact or circumstance arose after their declaration of readiness so as to render them *403 presently not ready for trial,” using the definition of “exceptional fact or circumstance” contained in CPL 30.30 (3) (b). (22 NY3d at 1178.) But, if “the People cannot demonstrate an exceptional fact or circumstance, then the People should be considered not to have been ready when they filed the off-calendar certificate, and the time between the filing and the following appearance cannot be excluded and should be charged to them.” (Id.)
The Lippman opinion would have represented a major change in existing speedy trial practice. Judge Graffeo’s three-Judge concurrence, by contrast, turned on “narrower” grounds, relying instead on — and merely applying — long established speedy trial principles. A prosecutor’s statement of readiness is presumptively “truthful and accurate.” (Id. at 1180-1181.) However, that presumption may be rebutted by proof that the readiness statement “did not accurately reflect the People’s position.” (Id. at 1181.) Where such proof exists, the statement of readiness is “illusory.” (Id.) The Graffeo opinion noted that this standard was met in that particular case, since “the prosecutor gave no explanation for the change in circumstances between the initial statement of readiness and the subsequent admission that the People were not ready to proceed without the medical records.” (Id.) Given this, the People’s initial COR “did not accurately reflect the People’s position” and was indeed illusory. (Id.)
2. This Court’s Initial Interpretation of Sibblies
Very soon after Sibblies came down, this court announced that it would follow the Graffeo opinion (People v McLeod, 44 Misc 3d 505, 509 [Crim Ct, NY County 2014]), and would continue to find that absent “proof that the readiness statement did not accurately reflect the People’s position,” a subsequent answer of “not ready” would not render a prior COR illusory. (Id.) In McLeod, this court, examining the record, specifically concluded that several postreadiness declarations that the People were not ready, although unexplained, did not render illusory the CORs that preceded them. (Id. at 510-512.)
3. Conflicting Appellate Division Decisions Interpreting Sibblies
The Appellate Division, First Department’s first decision interpreting Sibblies was People v Brown (126 AD3d 516 [1st Dept 2015], lv granted 25 NY3d 1160 [2015]). Brown expressly adopted the “narrower approach of Judge Graffeo,” which “leaves intact well-settled law that a post-certificate assertion *404 that the People are not ready does not, by itself, vitiate the previously filed certificate of readiness.” (126 AD3d at 517-518.) Specifically, there, the People filed a COR off-calendar on July 17, then announced in court on August 8 that they were not ready. (Id. at 518.) “On this record,” the Court held, “unlike [in] Sibblies, there is no ‘proof that the readiness statement did not accurately reflect the People’s position,’ so as to render the prior statement of readiness illusory.” (Id. [citation to Graffeo opinion in Sibblies omitted].)
Subsequently, a different panel of that same Court, in People v Rodriguez (135 AD3d 587 [1st Dept 2016]), took a radically different approach, yet made no mention of Brown at all. Rodriguez examined three postreadiness adjournment periods. For the first, the People answered not ready on the record, but gave no explanation for their lack of readiness. Rodriguez held that this vitiated the prior COR because “[n]othing in the record, express or inferred, explains their change in status from ready to not ready.” (Id. at 588.) For each of the second two, the People answered not ready on the record, then explained that the assistant district attorney (ADA) assigned to the case was on trial. However, the Court held that these explanations vitiated both the COR that preceded the first of these declarations of unreadiness and the one that the People filed before the second: “If the prosecutor was on trial at the prior and subsequent adjournments, it is unclear why the People filed and served an off-calendar certificate of readiness, or whether the prosecutor was on trial in the same or a different case.” (Id.)
While Rodriguez pays lip service to the Graffeo opinion in Sibblies, that case simply cannot be squared with the Graffeo opinion or, for that matter, Brown. Under the Graffeo opinion in Sibblies and under Brown, the facts of Rodriguez would not have led to a speedy trial dismissal because an unexplained on-the-record statement of unreadiness, by itself, does not vitiate a prior COR. Nor does a statement of unreadiness accompanied by the explanation that the ADA was on trial, unless either the explanation clearly establishes that the People were not in fact ready at the time they filed the COR or the defense is able to establish that the ADA was not, in fact, on trial when it was represented that she was.
4. This Court Will Follow Brown, Not Rodriguez
The irreconcilability of Brown and Rodriguez requires this court to make a hard choice. It must follow one of them, but *405 cannot follow both. Ultimately, the Court of Appeals will ratify one of the two approaches, but this court is not in a position to wait until that happens. The parties to this litigation are entitled to a prompt answer to the legal issue that they have raised. Given these exigencies, for now, this court will continue to follow the Graffeo opinion in Sibblies — and will hence follow Brown, and not Rodriguez.
First, an observation: That the People might be ready for trial on one date, but not ready on a subsequent date, is an entirely unremarkable phenomenon. There is nothing suspicious or unusual about it, and nothing about it is suggestive of bad faith. It is the approach of Brown and the Graffeo opinion in Sibblies that best recognizes this simple fact.
In McLeod, before either Brown or Rodriguez had been decided, this court explained why it would follow the Graffeo opinion. McLeod observed that the Court had not been able to locate another Court of Appeals case that, like Sibblies, involved a three-to-three split as to reasoning. (44 Mise 3d at 509.) Nevertheless, in McLeod, the court predicted that in such a situation the Court of Appeals would expect the lower courts to conclude that its holding was reflected in the position taken by those judges who concurred “on the narrowest grounds.” (Id.) Since the “narrowest grounds” that would explain the outcome of Sibblies are contained in the Graffeo opinion, this court elected to follow the Graffeo opinion. (Id.) Brown took the same approach, noting that “we apply the narrower approach of Judge Graffeo, which leaves intact well-settled law that a post-certificate assertion that the People are not ready does not, by itself, vitiate the previously filed certificate of readiness.” (126 AD3d at 517-518.)
There is nothing in Rodriguez that, to this court, requires revisiting this decision. Rather, this court believes that to reverse course and follow Rodriguez and the Lippman opinion would be ill-advised. The entire practice of honoring off-calendar CORs rests on the premise that a prosecutor’s statement of readiness, whether filed as a written COR or made on the record, is presumptively valid when made. That is, when an assistant district attorney, as an officer of the court, represents that she is ready for trial, a court not just can, but must, accept that representation as true. Indeed, for more than 30 years the Court of Appeals has recognized the filing of an off-calendar COR as a legitimate method of asserting trial readiness. (See e.g. People v Kendzia, 64 NY2d 331, 338 [1985].) *406 And, as a necessary corollary to this, an off-calendar COR is “presumed to be accurate and truthful.” (E.g. People v Acosta, 249 AD2d 161, 161 [1st Dept 1998].) In light of this presumption, it has also long been the law that the defendant has the burden of establishing that postreadiness delays should be charged to the People. (E.g. People v Miller, 113 AD3d 885, 887 [3d Dept 2014]; People v Daniels, 217 AD2d 448 [1st Dept 1995], citing People v Cortes, 80 NY2d 201 [1992].)
The result of these lines of precedent has always been that a postreadiness declaration that the People were not ready, by itself, did not render the prior statement of readiness illusory. “While subsequent requests for adjournments may indicate a lack of readiness at that time, they do not necessarily invalidate an earlier otherwise proper statement of readiness.” (People v Robinson, 171 AD2d 475, 477 [1st Dept 1991].) But following Rodriguez and the Lippman opinion must of necessity upend these long-settled rules. If those decisions carry the day, no prior statement of readiness, whether it takes the form of an on-the-record declaration or an off-calendar COR, can ever be presumed to be accurate and truthful, since almost any subsequent declaration of unreadiness will immediately call into doubt, and require scrutiny of, the prior statement. It therefore follows that this change in the law would also mean that, when it comes to postreadiness delays, the burden would no longer be on the defendant to establish chargeability. It would of necessity shift to the prosecution to prove that the time should not be charged.
For several reasons, this is not a desirable outcome. The first is that the Lippman approach, as adopted by the First Department in Rodriguez, will result in prolonged speedy trial litigation in a large number of cases in which there is a postreadiness declaration of unreadiness, which is, at least in this court, pretty much every case where the People have ever answered ready. This is specifically contemplated by the Lippman opinion, which notes that a hearing would need to be held in order to determine whether any reason proffered for the People’s postreadiness lack of readiness is an “exceptional circumstance,” as defined in section 30.30 (3) (b). (Sibblies, 22 NY3d at 1178.)
The inevitable increase in 30.30 hearings that would flow from this approach would consume scarce judicial resources. *407 Additionally, the increase in 30.30 hearings in otherwise garden-variety cases would also have the perverse effect of greatly prolonging a large number of criminal cases, seemingly frustrating the very purpose of the speedy trial statute. This case provides an excellent example of that. It has been in speedy trial litigation since October 21, 2015, nearly six months, and it is not one day closer to either trial or speedy trial dismissal than it was on that date.
The second undesirable effect relates to the disposition of potentially thousands of cases in which a speedy trial motion is pending, or has been filed and denied. A change in the law this radical would place at risk literally thousands of cases in which, postreadiness, a prosecutor answered “not ready” with no reason, or gave a legitimate but unexceptional reason for her unreadiness, with the settled expectation that, under the current state of the law, those answers would not undermine the presumption of validity that she believed attached to her prior statement of readiness.
And indeed, the single post-jRodriguez case that this court has been able to locate illustrates this. In People v America (51 Misc 3d 1003 [Crim Ct, NY County 2016]), a judge of this court, following the approach of Rodriguez, granted a 30.30 dismissal where the People answered “ready” on the record one time, then answered “not ready” on several subsequent dates, each time requesting a one-week adjournment, although the court consistently granted adjournments of more than one week. At one such calendar call the People explained that the arresting officer was unavailable, but for each of the others they proffered no explanation. There is no evidence that the calendar judge managing the case on those occasions believed anything to be amiss when accepting the People’s declarations of un-readiness. Nevertheless, in America the court, looking back at this record, concluded that, under Rodriguez, all of this postreadiness time should have been charged to the People and that none of their date requests should have been honored. To that court, the People’s assertion that the arresting officer was unavailable was insufficient because they did not explain why the officer was unavailable: “As for the July 22, 2015 adjournment, the People’s assertion that the arresting officer was unavailable is insufficient to establish that circumstance was exceptional. Why was the officer unavailable? The People did not say.” (Id. at 1007.) And, for each of the other adjournments, because “it was incumbent on the People to give reasonable *408 explanations for those declarations,” the entire adjournment period, not just the seven days that the People asked for, should be charged. (Id.)
This court disagrees with the reasoning of America. In this court’s view, the People there should have been entitled to proceed under the assumption that elaborate explanations for their lack of readiness and date requests were not required, and that for each of the relevant adjournments they would only be charged the seven days they believed they would be charged. This is particularly so since the calendar judge did not once adjourn the case for the seven-day period the People sought; due to court congestion, each adjournment was considerably longer. The outcome of America can reasonably be expected to recur in case after case if the requirements dictated by Rodriguez and the Lippman opinion in Sibblies become the law.
Not only is such a radical change in speedy trial law undesirable, it is not necessary. Under current law, as applied in Brown and the Graffeo opinion in Sibblies, the criminal justice system has functioned quite well presuming that the People will only answer ready when they are actually ready, and that they will withdraw their statement of readiness when and if they later learn that they were not actually ready when they said they were. The current system is also effective in identifying the rare case in which a statement of readiness is genuinely illusory, and addressing that situation accordingly. (E.g. People v Mortoza, 45 Misc 3d 658 [Crim Ct, Queens County 2014] [COR illusory where People first answered ready, then subsequently answered not ready because they were waiting for a 911 recording]; People v Bachelor, 50 Misc 3d 1203[A], 2015 NY Slip Op 51869 [U] [Crim Ct, Bronx County 2015] [finding statement of readiness illusory when People answered ready on an instrument they later conceded was jurisdictionally defective].) A radical overhaul is simply not warranted.
Thus, in the end, this court is confronted with four binding appellate decisions. Two point in one direction: Rodriguez and the Lippman opinion in Sibblies. Two point in the other: Brown and the Graffeo opinion in Sibblies. Until the final word dictates something else, this court will continue to follow Brown and the Graffeo opinion in Sibblies.
Having so concluded, the court turns to the speedy trial calculations in this case.
*409 B. The Speedy Trial Calculations
1. June 6,2015 to June 11, 2015: Five Days Chargeable
Criminal Procedure Law § 1.20 (17) provides that “a criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court.” In this case, that event occurred at defendant’s arraignment on June 6, 2015. The speedy trial clock started on the next day. (People v Stiles, 70 NY2d 765, 767 [1987].) At arraignment, the court adjourned the case to June 11 for conversion.
For this period, five days are chargeable to the People.
2. June 11, 2015 to July 7, 2015: 26 Days Chargeable
On June 11, 2015, the People consented to hearings and the case was adjourned to July 7 for hearing and trial.
For this period, 26 days are chargeable to the People.
3. July 7, 2015 to September 10, 2015: 13 Days Chargeable
On July 7, 2015, the People answered “not ready” because a necessary police officer was unavailable, and the court adjourned the case to September 10 for hearing and trial. However, off-calendar, on July 20, the People filed a COR. Defendant has failed to meet his burden of establishing that this entire period of postreadiness delay should be charged to the People.
For this period, 13 days are chargeable to the People.
4. September 10, 2015 to October 21, 2015: Four Days Chargeable
On September 10, 2015, the People answered “not ready” and requested September 14. The People gave no reason for their lack of readiness. The court adjourned the case to October 21. Defendant has failed to meet his burden of establishing that this entire period of postreadiness delay should be charged to the People.
For this period, four days are chargeable to the People.
5. October 21, 2015 to April 28, 2016: Zero Days Chargeable
On October 21, 2015, the defense filed a motion to dismiss pursuant to CPL 30.30, and the court adjourned the case to January 29, 2016, for the court’s decision. On January 29, 2016, the court denied the motion, finding that 48 chargeable days had elapsed. Defendant then immediately filed a renewed 30.30 motion, and the court adjourned the case to April 28 for the court’s decision.
For this period, zero days are chargeable to the People, due to ongoing motion practice.
*410 C. Conclusion
As detailed above, 48 days (5+26+13+4=48) are chargeable to the People. Defendant’s renewed motion to dismiss pursuant to CPL 30.30 is accordingly denied.
III. Conclusion
Since 48 days of speedy trial time are chargeable to the People, defendant’s motion to dismiss is denied.